IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **CARL BILLY KIZZIAH,** | ] |
| | ] |
| Movant, | ] |
| | ] |
| v. | ] Case No.: 7:23-cv-8026-ACA |
| | ] |
| **UNITED STATES OF AMERICA** | ] |
| | ] |
| Respondent. | ] |

## MEMORANDUM OPINION

Carl Billy Kizziah moves, under 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. (Doc. 4). He contends that trial counsel provided ineffective assistance by (1) failing to file a notice of appeal ("Claim One"); (2) failing to object to a breach of the plea agreement ("Claim Two"); (3) failing to object to the length of the sentence ("Claim Three"); (4) failing to object to the length of supervised release ("Claim Four"); (5) failing to object to the calculation of criminal history points ("Claim Five"); (6) failing to research Mr. Kizziah's history ("Claim Six"); and (7) failing to request safety valve relief ("Claim Seven").[1] (*Id.* at 14–18, 20–21).

---

[1] In an earlier order, the court construed Mr. Kizziah's motion to be asserting eight claims. (*See* doc. 18). Two of those claims relate to the calculation of his criminal history points, so in this opinion, the court has consolidated them into one claim.

Because Mr. Kizziah's claims are meritless, the court **WILL DENY** the § 2255 motion and **WILL DENY** him a certificate of appealability.

I.  BACKGROUND

In 2021, a grand jury indicted Mr. Kizziah on conspiracy to possess with intent to distribute and to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 846, 841(a)(1) ("Count One"), distribution of five grams or more of methamphetamine, in violation of § 841(a)(1) ("Count Three"), and possession with intent to distribute fifty grams or more of methamphetamine, in violation of § 841(a)(1) ("Count Four"). *United States v. Kizziah*, case no. 21-383, doc. 1 (N.D. Ala. Nov. 23, 2021).[2] Mr. Kizziah entered a plea agreement under which he pleaded guilty to all counts in exchange for, among other terms, the government recommending a reduction to his offense level based on acceptance of responsibility, a sentence at the low end of the guidelines range, and a supervised release term "to be determined by the court." (*Kizziah* doc. 16 at 1, 6; *see also Kizziah* minute entry Apr. 27, 2022). The plea agreement included an appeal waiver with exceptions for any sentence imposed in excess of a statutory maximum or the advisory guidelines range. (*Kizziah* doc. 16 at 7).

---

[2] The court cites documents from Mr. Kizziah's criminal proceeding as "*Kizziah* doc. __."

2

Mr. Kizziah's presentence investigation report recommended assigning him eleven criminal history points, resulting in a criminal history category of V. (*Kizziah* doc. 30 at 21 ¶ 50). Two of the criminal history points came from a 2019 conviction for driving under the influence of a controlled substance, for which he was sentenced to 365 days' jail and fined $500. (*Id.* at 20 ¶ 46). The presentence investigation report noted that whether Mr. Kizziah had attorney representation in connection with the offense was unknown but assessed two points anyway under the Eleventh Circuit's decision in *United States v. Acuna-Reyna*, 677 F.3d 1282 (11th Cir. 2012). (*Id.*). Three criminal history points came from Mr. Kizziah's state convictions for fraudulent use of a credit or debit card and receiving stolen property, and three more came from his federal conviction for being a felon in possession of a firearm. (*Id.* at 17–20 ¶¶ 44–45). The receiving-stolen-property conviction appears to arise from Mr. Kizziah's disposition of the same gun at issue in the felon-in-possession conviction. (*See id.*).

With a total offense level of 27, Mr. Kizziah's advisory guidelines range was 120 to 150 months' imprisonment. (*Id.* at 30 ¶ 107). In addition to the advisory imprisonment range, the presentence investigation report also addressed supervised release. (*Kizziah* doc. 30 at 31 ¶¶ 110–11). Because Counts One and Four were Class A felonies and Count Three was a Class B felony, the advisory guideline term of supervised release for each offense was two to five years. (*Id.* at 31 ¶ 111); U.S.S.G.

§ 5D1.2(a)(1); *see* 18 U.S.C. § 3559(a)(1)–(2) (defining Class A and Class B felonies by reference to the maximum term of imprisonment authorized); 21 U.S.C. § 841(b)(1)(A)(viii) (imposing a statutory maximum sentence of life for offenses involving fifty grams or more of methamphetamine); *id.* § 841(b)(1)(B)(viii) (imposing a statutory maximum sentence of forty years for offenses involving five grams or more of methamphetamine). Aside from the guideline range, Mr. Kizziah faced a mandatory minimum term of five years' supervised release for Counts One and Four and a mandatory minimum term of four years' supervised release for Count Three. (*Kizziah* doc. 30 ¶ 110); *see also* 21 U.S.C. § 841(b)(1)(A)(viii), (b)(1)(B)(viii).

At the sentence hearing, the court adopted the presentence investigation report and found that the advisory guidelines range was 120 to 150 months' imprisonment. Over the joint recommendation of Mr. Kizziah's attorney and the government that the court impose a sentence of 120 months' imprisonment, the court imposed a sentence of 150 months' imprisonment. The court ordered Mr. Kizziah's federal sentence to begin that day and to run concurrently with any sentence imposed in three pending state cases, with the intention that if the state cases were dismissed, he would serve his federal sentence in federal prison and if the state cases were not dismissed, he would receive credit for any state sentence he served. The court also

imposed fifteen years' supervised release. The court entered the judgment on August 31, 2022. (*Kizziah* doc. 31). Mr. Kizziah did not appeal.

In August 2023, Mr. Kizziah, proceeding *pro se*, filed this § 2255 motion. (Doc. 1 at 12). Mr. Kizziah attested, under penalty of perjury, that he had asked his attorney to file an appeal and his attorney did not do so. (Doc. 4 at 14–18). In addition to his claim of ineffective assistance for failing to file a notice of appeal, Mr. Kizziah also listed various other alleged deficiencies by trial counsel: (2) failing to object to a breach of the plea agreement; (3) failing to object to the length of the sentence; (4) failing to object to the length of supervised release; (5) failing to object to the calculation of criminal history points; (6) failing to research Mr. Kizziah's history; and (7) failing to request safety valve relief. (*Id.* at 20–21).

After the government conceded that an evidentiary hearing was necessary with respect to Mr. Kizziah's claim relating to the failure to file a notice of appeal (doc. 7 at 6), the judge previously assigned to this case appointed counsel for Mr. Kizziah and held a hearing (doc. 9; *see also* minute entry Dec. 13, 2023). At the evidentiary hearing, Mr. Kizziah moved for the judge to recuse himself and the judge granted that motion. (Minute entry Dec. 13, 2023).

On reassignment to the undersigned, the court entered an order clarifying that it construed Mr. Kizziah's amended § 2255 motion to assert eight grounds for relief based on ineffective assistance of counsel. (Doc. 18 at 1–2). But because the only

5

ground that involved any disputes of fact was the claim relating to trial counsel's alleged failure to file a notice of appeal, the court limited the evidentiary hearing to that claim. (*Id.* at 2). The court notified Mr. Kizziah that the other seven claims were ripe for summary disposition and invited Mr. Kizziah to file a brief and any other material that might be relevant to those seven claims. (*Id.* at 3).

Three witnesses testified at the evidentiary hearing: Mr. Kizziah, Carla Lindley, who is Mr. Kizziah's sister, and trial counsel. Mr. Kizziah testified that right before the court sentenced him, trial counsel told him that he could appeal if the court went above the guidelines range but not if the court stayed within the guidelines range. After the sentencing was over, he turned around and looked at Ms. Lindley, who told him he needed to appeal. He asked trial counsel why he could not appeal and trial counsel told him he "can appeal anything." He told trial counsel that he wanted to appeal.

Mr. Kizziah further testified that at some point after he had begun serving his sentence, he wrote trial counsel to request a copy of his docket sheet and to ask about the term of supervised release and trial counsel responded that he "had already started this and we got it locked down. [Trial counsel] informed [Mr. Kizziah] that the 180-month [supervised release] that they couldn't do that." But when the court questioned Mr. Kizziah further about this, Mr. Kizziah testified that in fact, trial counsel sent him a copy of the docket sheet and a cover letter with a handwritten

6

note saying that Mr. Kizziah would "have to get out and start serving it and we can put in for early release from that."

Ms. Lindley testified that immediately after the sentencing, Mr. Kizziah turned around in his seat and she told him that he needed to appeal. Ms. Lindley first testified that Mr. Kizziah responded, "Yes, I talked to him," but on further questioning she testified that it was more like a mouthed "yes," though she could not recall the exact words.

Ms. Lindley also testified that after the sentencing, she spoke with trial counsel about why the sentence was longer than they had anticipated and whether it could be appealed. Trial counsel told her that he had already spoken with Mr. Kizziah about that. When Mr. Kizziah's current counsel asked if trial counsel "explain[ed] that any further or just said we've already spoken about it and that was it," she testified "[t]hat was the gist of it." But when the court questioned her further about the exact conversation, Ms. Lindley testified that she also told counsel that Mr. Kizziah wanted to appeal "and he said yes, I know, we talked, you know, he's told me that." Ms. Lindley testified that about a week after the federal sentencing, she called trial counsel's office to get some information about a pending state case against her brother, and when counsel called her back, he told her that "he was in the process of the appeal."

7

At some point after the federal sentencing, Mr. Kizziah asked his sister to check on jail credits he should have received for his state cases. In June or July 2023, Ms. Lindley called the Clerk's Office in Tuscaloosa and spoke with a woman who was responsible for working on the paperwork for jail credit.[3] That woman checked and told Ms. Lindley that Mr. Kizziah had not appealed.

Trial counsel, an assistant federal public defender, testified that he could not recall Mr. Kizziah ever asking him to file a notice of appeal, but if Mr. Kizziah had asked to appeal, he would have filed a notice of appeal. His office has a policy that if a client requests an appeal, the attorney will file an appeal. He also testified that he could not recall having a conversation with Ms. Lindley about an appeal, but if she had told him that Mr. Kizziah wanted to appeal, he would have asked Mr. Kizziah if he wanted to appeal or, if time was short, he would have filed a notice of appeal and then checked with Mr. Kizziah about whether he wanted to proceed with the appeal.

Trial counsel testified that about six months after sentencing, Mr. Kizziah sent a letter asking for some documents, including the judgment, and asking if there was any way to reduce the term of supervised release. Trial counsel wrote back with the

---

[3] The court takes judicial notice of the fact that there is no Clerk's Office in Tuscaloosa.

8

requested documents and told Mr. Kizziah that he could contact counsel about reducing the term of supervised release once he began serving that term.

## II. DISCUSSION

As the court stated in an earlier order, the court construes Mr. Kizziah's amended § 2255 motion to assert multiple claims for relief. (*See* doc. 18 at 1–2). Each of the claims relates to trial counsel's alleged ineffectiveness. To prevail on a claim of ineffective assistance of counsel, Mr. Kizziah must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). To show deficient performance, the movant "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotation marks omitted). To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 1. Claim One

Claim One is that trial counsel was ineffective for failing to file a notice of appeal despite Mr. Kizziah's request that he do so. (Doc. 4 at 14–18). In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the Supreme Court held that the *Strickland*

standard for ineffective assistance claims applies to claims that counsel was ineffective for failing to file a notice of appeal. The Court also held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" and prejudice is presumed. *Id.* at 477, 483.

Resolution of this claim depends on the factual dispute about whether Mr. Kizziah asked trial counsel to file a notice of appeal. Mr. Kizziah testified that he did, Ms. Lindley testified that she told trial counsel about Mr. Kizziah's desire to appeal, and trial counsel testified that he could not recall either of them making any such statements. Based on their respective demeanors and the consistency of their testimony, the court finds trial counsel's testimony more credible than Mr. Kizziah's and Ms. Lindley's. For example, Ms. Lindley initially testified that "the gist" of her post-sentencing conversation with trial counsel was that Mr. Kizziah and trial counsel had spoken about whether the sentence could be appealed. But she later testified that trial counsel specifically told her that Mr. Kizziah had said he wanted to appeal. Similarly, Ms. Lindley initially testified that her brother told her, in the minute after sentencing, that he had "talked to [trial counsel]" about sentencing, but she then testified that he just "mouth[ed]" a "yes" when she said he needed to appeal. Although subtle, these are important variations in the testimony that make the court doubt the accuracy of Ms. Lindley's memory and testimony.

Mr. Kizziah's testimony was also not persuasive. His testimony sometimes wandered and became confused (for example, his testimony about trial counsel's response to the letter asking about supervised release) and he conceded that he did not know if trial counsel heard him say that he wanted to appeal. By contrast, trial counsel's demeanor and testimony about the processes his office uses for appeals persuaded the court that, had Mr. Kizziah indicated a desire to appeal, counsel would have filed a notice of appeal.

The court finds as a fact that Mr. Kizziah did not clearly tell trial counsel that he wanted to appeal and that Ms. Lindley did not tell trial counsel that her brother wanted to appeal. Accordingly, trial counsel did not perform deficiently by failing to file a notice of appeal. *See Flores-Ortega*, 528 U.S. at 478. The court **WILL DENY** this claim.

2. Claim Two

Mr. Kizziah's second claim is that trial counsel was ineffective for failing to object to the government's breach of the plea agreement. (Doc. 4 at 20). This claim is refuted by the record. The plea agreement obligated the government to make certain recommendations to the court, including the recommendation that the court sentence him to the low end of the guidelines range. (*Kizziah* doc. 16 at 6). The government made that recommendation at the sentence hearing. The court's rejection of the recommendation does not mean that the government breached its

obligation. (*See id.* at 9) (providing that "any sentence recommended by the United States is **NOT BINDING UPON THE COURT**"). The court therefore **WILL DENY** Claim Two.

3. Claim Three

Claim Three is that trial counsel was ineffective for failing to object when the court sentenced him based on an assumption that pending state charges would be dismissed. (Doc. 4 at 20). This claim is refuted by the record. At the sentence hearing, the court acknowledged the pending state cases and explained that if the state cases were dismissed, Mr. Kizziah would serve his federal sentences in federal prison, and if the cases were not dismissed, he would receive federal credit for any time he served in state prison. The court therefore did not base its sentence on any assumption that the state charges would be dismissed. The court **WILL DENY** Claim Three.

4. Claim Four

Claim Four is that trial counsel was ineffective for failing to object to the 180-month term of supervised release on the ground that it exceeded the 60-month maximum for a Class A felony. (Doc. 4 at 20).

As set out above, Counts One and Four were Class A felonies and Count Three was a Class B felony. *See supra* at 3–4. 18 U.S.C. § 3583 provides that, "[e]xcept as otherwise provided," the statutory maximum term of supervised release for Class A

and B felonies is five years. 18 U.S.C. § 3583(b)(1). But the statute under which Mr. Kizziah was convicted provides for a *minimum* term of four years' supervised release for Count Three and a *minimum* term of five years' supervised release for Counts One and Four. 21 U.S.C. § 841(b)(1)(A)(viii), (b)(1)(B)(viii). The statute does not set out a maximum. *See id.* As a result, any objection on the ground that the supervised release term was in excess of the maximum would have been meritless. And an attorney's failure "to make a meritless objection does not constitute deficient performance." *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015). Accordingly, the court **WILL DENY** Claim Four.

5. Claim Five

Claim Five is that trial counsel was ineffective for failing to object to the assessment of criminal history points in the presentence investigation report. (Doc. 4 at 20–21). This claim can be split into two subparts: (1) under U.S.S.G. § 4A1.2(a)(2), he should not have received three points for the state conviction for receiving stolen property and three points for the federal conviction for being a felon in possession of a firearm because both convictions related to the same offense; and (2) he should not have received two points for the state conviction for driving under the influence of a controlled substance because an attorney did not represent him in connection with that conviction. (*Id.* at 14–15, 20–21). The court will address each subpart in turn.

*a. Section 4A1.2(a)(2)*

In 2009, Mr. Kizziah was arrested for multiple counts of fraudulent use of a credit card and one count of receiving stolen property, arising from using a credit card issued to New Lexington Properties, LLC, and disposing of a Remington rifle that belonged to New Lexington Properties. (*Kizziah* doc. 30 at 17–18 ¶ 44). He pleaded guilty and was sentenced on March 21, 2011. (*Id.*). Mr. Kizziah received three criminal history points for these convictions. (*Id.*).

In 2011, Mr. Kizziah was arrested for being a felon in possession of a firearm. (*Id.* at 18–20 ¶ 45). This charge arose from Mr. Kizziah's pawning of the Remington rifle that he acquired from New Lexington Properties. (*Kizziah* doc. 30 at 18–20 ¶ 45). He pleaded guilty in March 2011 and was sentenced in June 2011. (*Id.*). Mr. Kizziah received three criminal history points for this conviction. (*Id.*).

Mr. Kizzah contends that counsel was ineffective for failing to object to the assignment of six points on the ground that, under § 4A1.2(a)(2), the state and federal sentences should have been considered a single sentence and received only three points. (Doc. 4 at 14). Section 4A1.2(a)(2) provides that multiple prior sentences are treated as a single sentence if "(A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day."

Any objection to the assignment of criminal history points would have been meritless. Mr. Kizziah's sentences were properly counted separately because they did not result from offenses contained in the same charging instrument (indeed, being cases filed in state and federal court, they could not have been charged in the same instrument) and the sentences were not imposed on the same day. (*See Kizziah* doc. 30 at 17–20 ¶¶ 44–45). Accordingly, counsel did not perform deficiently by failing to make a meritless objection to the assignment of six criminal history points. *See Denson*, 804 F.3d at 1342. The court **WILL DENY** this part of Claim Five.

### b. Points for Unrepresented Conviction

The presentence investigation report assigned Mr. Kizziah two criminal history points for a conviction for driving under the influence of a controlled substance because he was sentenced to 365 days' imprisonment and a $500 fine. (*Kizziah* doc. 30 at 20 ¶ 46). The presentence investigation report noted that "[a]ttorney representation is unknown; however, due to *Acuna-Reyna*, because the conviction and fine are valid, the offense is countable." (*Id.*). Mr. Kizziah contends that counsel was ineffective for failing to object to the assessment of these criminal history points.[4] (Doc. 4 at 15, 20–21).

---

[4] Mr. Kizziah references trial counsel's objection to points assessed for a prior "DUI of a Controlled Substance under Case No. 18-435." (Doc. 4 at 15). He received three points for a conviction for unlawful distribution of a controlled substance, in case number 18-435. (Doc. 30 at

The Sixth Amendment bars imposition of a prison sentence for any offense unless the defendant was represented by counsel or made a knowing and intelligent waiver of counsel. *Alabama v. Shelton*, 535 U.S. 654, 662 (2002). But an uncounseled defendant may be sentenced to a fine without infringing on the Sixth Amendment. *Scott v. Illinois*, 440 U.S. 367, 373–74 (1979). Accordingly, it appears from the presentence investigation report that Mr. Kizziah's prison sentence of 365 days' jail might have violated the Sixth Amendment, although his fine of $500 did not. (*See Kizziah* doc. 30 at 20 ¶ 46). Mr. Kizziah contends that, as a result, counsel was ineffective for failing to object to the assessment of criminal history points for conviction. (Doc. 4 at 15).

The Eleventh Circuit addressed how a Sixth Amendment violation impacts the assessment of criminal history points in *Acuna-Reyna*. In that case, the defendant had been convicted, without representation, of a misdemeanor offense for which he received a sentence of probation and a fine. *Acuna-Reyna*, 677 F.3d at 1283. At a later sentencing for a different offense, the defendant objected to using a conviction obtained in violation of the Sixth Amendment to enhance his new sentence. *Id.* at 1283–84. The court overruled his objection and assessed him one criminal history point, under § 4A1.1(b), for the misdemeanor conviction. *Id.* at 1283–84. The

---

20 ¶ 47). It appears that Mr. Kizziah's reference to that case was in error, as he was represented in that case. (*See id.*).

Eleventh Circuit affirmed, holding that, even assuming imposition of probation for an uncounseled misdemeanor conviction violated the Sixth Amendment, "the remedy for that violation would be a vacatur of that portion of the sentence only." *Id.* at 1285. Because the conviction itself and the fine remained valid, the court could assess one criminal history point. *Id.* at 1285–86.

Mr. Kizziah received two criminal history points under § 4A1.1(b) because the prior sentence of imprisonment was between sixty days and thirteen months. (*Kizziah* doc. 30 at 20 ¶ 46). The imposition of a sentence of incarceration when the defendant did not have the assistance of counsel (and had not waived assistance of counsel) might have violated the Sixth Amendment. *See Shelton*, 535 U.S. at 662. Thus, under *Acuna-Reyna*, the only part of the sentence that remained valid for enhancement purposes was the $500 fine. 677 F.3d at 1285. And the Sentencing Guidelines permit assessment of only one criminal history point for sentences of fines. U.S.S.G. § 4A1.1(c); *see Acuna-Reyna*, 677 F.3d at 1286. Accordingly, had counsel objected to the two criminal history points, the court might have had to sustain the objection and assess only one point.

Nevertheless, counsel's failure to object does not constitute ineffective assistance because reducing Mr. Kizziah's criminal history points by one point results in a criminal history score of ten, which remains within criminal history category V. *See* U.S.S.G. Sentencing Table; (*see Kizziah* doc. 30 at 21 ¶ 50). As

such, Mr. Kizziah cannot establish prejudice based on counsel's failure to object because his advisory guidelines range would have remained the same. *See Strickland*, 466 U.S. at 694. The court therefore **WILL DENY** this part of Claim Five.

    6.  Claim Six

In this claim, Mr. Kizziah states in a conclusory manner that counsel was ineffective for failing "to investigate/research Kizziah's prior history which is quite evident in failing to object." (Doc. 4 at 21). To the extent Mr. Kizziah intends this to incorporate his objections to the criminal history point calculation, that claim fails for the same reasons set out above. To the extent Mr. Kizziah intends to assert a different claim, he has not adequately explained the factual basis for the claim. *See* Rules Governing § 2254 Cases, Rule 2(c)(2) ("The motion must . . . state the facts supporting each ground . . . ."). Accordingly, the court **WILL DENY** Claim Six.

    7.  Claim Seven

In this claim, Mr. Kizziah asserts that counsel was ineffective for failing to request safety valve relief. (Doc. 4 at 21; *see also id.* at 14). Just as with Claim Six, he offers no factual support for this claim. Accordingly, the court **WILL DENY** Claim Seven.

### III. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Cases, Rule 11(a). The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or "that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). This court finds that Mr. Kizziah has not satisfied either standard. The court **WILL DENY** a certificate of appealability.

### IV. CONCLUSION

The court **WILL DENY** Mr. Kizziah's § 2255 motion. The court **WILL DENY** a certificate of appealability.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this August 16, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE